IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

METROPOLITAN LIFE INSURANCE
COMPANY, *
              Plaintiff, *
               *
    v. *    Civil No. JFM-10-2785
               *
TESHIA P. DAVIS and LAVETTE S. *
JACKSON, as the personal representative *
of the Estate of Errol K. Jackson, *
              Defendant. *
               *
               *
              ******

## MEMORANDUM

On May 7, 2010, Plaintiff Metropolitan Life Insurance Company ("MetLife") filed a Complaint in Interpleader in the United States District Court for the Western District of North Carolina against Defendants Teshia P. Davis ("Davis") and Lavette S. Jackson, as the personal representative of the Estate of Errol K. Jackson ("Jackson"). This Complaint was filed pursuant to 28 U.S.C. § 1335, requesting that the Court order Defendants to interplead and settle among themselves their respective rights to the proceeds of a life insurance policy that was issued by MetLife on October 25, 1996 on the life of Errol K. Jackson (the "Insured") with a death benefit of $196,500. On October 4, 2010, the parties consented to the transfer of this action to the United States District Court for the District of Maryland. The Order transferring the action was entered on October 7, 2010. Defendant Jackson filed an amended counterclaim against MetLife on February 17, 2011. Now pending before this Court is MetLife's Motion to Dismiss Amended Counterclaims of Defendant Lavette S. Jackson, as well as MetLife's Motion for Discharge from Further Liability, Permanent Injunction, Dismissal with Prejudice, and Recovery of Attorneys'

Fees and Costs. The motions have been fully briefed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2008). For the reasons stated herein, MetLife's Motions are both granted.

I.  **Background**

MetLife issued a life insurance policy, Policy Number 963 405 298 UM (the "Policy"), with a death benefit of $196,500 to the Insured on October 25, 1996. (*See* Compl., Ex. A.) At the time the Insured applied for the Policy, he designated his then-spouse, Davis, as the beneficiary of the Policy. (*Id.* at ¶ 8.) The Policy includes information on change of beneficiary, providing:

> You [the Insured] may change the . . . beneficiary or contingent beneficiary of this policy by written notice or assignment of the policy. No change is binding on us [MetLife] until it is recorded at our Designated Office.
>
> Once recorded, the change binds us as of the date you signed it. The change will not apply to any payment made by us before we recorded your request. We may require that you send us this policy to make the change.

(*See* Compl., Ex. A at 18.)

Davis and the Insured divorced in 2005 in a proceeding in the State of Georgia. (Compl. ¶ 9.) Jackson and the Insured married on November 26, 2005. (*See* Am. Countercl. ¶ 8.) Jackson alleges that in late 2005 or early 2006, the Insured contacted MetLife Agent John Karter ("Karter") in order to change the beneficiary of the Policy to Jackson. (*Id.* at ¶ 9.) Jackson claims that Karter returned the Insured's call, and left a message with the Insured's sister, with whom the Insured was living at the time, requesting Jackson's Social Security Number. (*Id.*) According to Jackson, the Insured wrote Jackson's Social Security Number on the same message slip and gave it to his sister to provide to Karter upon his return call. (*Id.*)

On April 21, 2008, the Insured called MetLife to request the form necessary to change the beneficiary on his policy. (*Id.* at ¶ 10 & Ex. 1.) The following day, MetLife sent the Insured

the requested form and instructed the Insured to "complete all information, and then sign and date the form. . . . [r]eturn the form(s) in the enclosed envelope to the attention of the 'B&O UNIT.'" (*Id.*, Ex. 2.) There is no allegation that the Insured returned the change of beneficiary form. MetLife notified the Insured in 2008 that the Policy would lapse if he did not pay the premium by a certain date. (*Id.* at ¶ 12.) The Insured failed to make the payment and the policy lapsed. (Pl.'s Mot. to Dismiss Am. Countercl. 5.) Following the lapse, the Insured contemplated taking out a new policy with a face value of $250,000. (*See* Am. Countercl. ¶ 16 & Ex. 3.) This new policy proposal contains no beneficiary designation. (*See id.*, Ex. 3.) Rather than take out a new policy, however, the Insured reinstated the Policy in May 2009 with the same amount of $196,500. (*See id.*, Ex. 4.)

The application for reinstatement contains a beneficiary section with the following instructions:

> OWNER/BENEFICIARY: If this application is being used: to convert a term policy or rider; or to exercise an option, this section MUST be completed.
> If this application is being used: to reinstate a policy; or to make a change to an existing policy, this section need NOT be completed.

(*Id.*, Ex. 4 at 4.) Below these instructions, the application contains an open field for the policyholder to provide beneficiary information. (*See id.*, Ex. 4 at 5.) This field was left blank on the Insured's reinstatement application. (*See id.*, Ex. 4 at 5.) The Insured agreed that he "read [the] application for life insurance including any amendments and supplements and to the best of [his] knowledge and belief, all statements are true and complete." (*Id.*, Ex. 4 at 10.) The Insured signed the application for reinstatement on May 9, 2009. (*Id.*, Ex. 4 at 16.)

The Insured died two months later on July 18, 2009, at which time the life insurance benefits became payable under the Policy. (Compl. ¶ 10.) In addition to the $196,500 death

3

benefit, a premium refund of $110 became payable under the Policy, for a total claim value of $196,610 (the "Proceeds"). (*Id.* at ¶ 11.) On or about August 3, 2009, Davis submitted a claim form to MetLife seeking the Proceeds from the Policy. (*Id.* at ¶ 12 & Ex. B.) On or about August 25, 2009, Jackson was appointed as the personal representative of the estate of the Insured. (*Id.* at ¶ 13.) On September 21, 2009, Jackson, in her capacity as the estate's representative, submitted a claim form to MetLife seeking the Proceeds from the Policy. (*Id.* at ¶¶ 14-15 & Ex. C.) Based on these competing claims, MetLife initiated this interpleader action on May 7, 2010. (ECF No. 1.) On January 21, 2011, Jackson filed a counterclaim against MetLife. (ECF No. 54.) On February 17, 2011, Jackson filed an amended counterclaim. (ECF No. 62.)[1]

## II.      Standard of Review

MetLife moves this Court to dismiss Jackson's amended counterclaim for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). "'[T]he purpose of Rule 12(b)(6) is to test the legal sufficiency of a complaint' and not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999)). In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Generally, when ruling on a

---

[1]The amended counterclaim supersedes Jackson's original counterclaim against MetLife, rendering the original counterclaim moot. *See Young v. City of Mt. Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) ("As a general rule, an amended pleading ordinarily supersedes the original and renders it of no legal effect.") (internal quotation marks and citation omitted); *see also* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1476 (2d ed. 1990) ("Once an amended pleading is interposed, the original pleading no longer performs any function in the case . . . .").

12(b)(6) motion, the court assumes that the facts alleged in the complaint are true and draws all reasonable factual inferences in the nonmoving party's favor. *Edwards*, 178 F.3d at 244. A complaint need not provide "detailed factual allegations," but it must "provide the grounds of [the plaintiff's] entitlement to relief" with "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (internal quotations omitted).

### III. Analysis

The two motions filed by MetLife now ripe for consideration are its Motion to Dismiss Amended Counterclaims of Defendant Lavette S. Jackson, as well as its Motion for Discharge from Further Liability, Permanent Injunction, Dismissal with Prejudice, and Recovery of Attorneys' Fees and Costs.

#### A. Motion to Dismiss Amended Counterclaims

Jackson alleges that MetLife breached its contract and was negligent in its duty to properly record the change of beneficiary on the Policy. MetLife moves this Court to dismiss both of Jackson's counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6). Each counterclaim is considered in turn.

##### 1. *Breach of Contract*

Jackson claims that MetLife breached "its obligation to properly record the change in the designation of the beneficiary for [the Policy] or, in the alternative, to remove the name of the Co-Defendant Teshia P. Davis as beneficiary as directed by the Decedent." (Am. Countercl. ¶ 23.) Alternatively, Jackson claims that as the intended third party beneficiary of the Policy, she "was owed a contractual obligation by [] MetLife to properly record the change of the

5

designation of the beneficiary of the aforementioned insurance policy as directed by the Decedent," and MetLife breached that obligation. (*Id.* at ¶¶ 25-26.)

As this Court has diversity jurisdiction over this action, Maryland choice of law rules apply. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009). "In insurance contract cases, Maryland courts generally follow the rule of *lex locus contractu*, which requires that the construction and validity of a contract be determined by the law of the state where the contract is made." *Roy v. Nw. Nat'l Life Ins. Co.*, 974 F. Supp. 508, 512 (D. Md. 1997); *Aetna Cas. & Sur. Co. v. Souras*, 552 A.2d 908, 911 (Md. Ct. Spec. App. 1988) (citing *Traylor v. Grafton*, 332 A.2d 651, 660 (Md. 1975)). "For choice-of-law purposes, a contract is made where the last act necessary to make the contract binding occurs." *Roy*, 974 F. Supp. at 512 (citing *Sting Sec, Inc. v. First Mercury Syndicate, Inc.*, 791 F. Supp. 555, 558 (D. Md. 1992)). Generally, "[t]he *locus contractu* of an insurance policy is the state in which the policy is delivered and the premiums are paid." *Aetna*, 552 A.2d at 911 (citing *Sun Ins. Office v. Mallick*, 153 A. 35, 39 (Md. 1931)). In the instant action, though the electronic payments were made from a Maryland bank account (*see* Am. Countercl., Ex. 4 at 16-17), the Policy was originally issued and delivered in Georgia, and later reinstated, with the Insured's signature, in Georgia (*see* Am. Countercl., Ex. 4 at 4, 14). Accordingly, the last act necessary to make the contract binding occurred in Georgia and Georgia law applies.

In Georgia, "the elements of a right to recover for a breach of contract are the breach and the resultant damages to the party who has the right to complain about the contract being

broken." *Budget Rent-A-Car v. Webb*, 220 Ga. App. 278, 279 (Ga. Ct. App. 1996).[2] MetLife maintains that Jackson has not established a breach by MetLife, whether the alleged breach is to the Insured or to Jackson as a third-party beneficiary. (Mot. to Dismiss Am. Countercls. 12.) Jackson, however, alleges that MetLife breached "its obligation to properly record the change of beneficiary for [the Policy] or, in the alternative, to remove the name of the Co-Defendant Teshia P. Davis as beneficiary as directed by the Decedent" (Am. Countercl. ¶ 23) by (1) not calling the Insured back and obtaining Jackson's Social Security Number that was allegedly left on a message slip for his sister to relay to Karter (*Id.* at ¶ 9); (2) not changing the Insured's beneficiary designation to 13 individuals based on a telephone call (*id.* at ¶¶ 10-11); (3) not effectuating a beneficiary designation allegedly made on a new policy proposal (*id.* ¶ 16); and (4) not filling out the beneficiary section of the reinstatement application (*id.* ¶ 13).

Based on the terms of the Policy, Jackson's first two theories must fail. (*See* Compl., Ex. A at 18.) The Policy clearly requires written notice or assignment of the policy to change the beneficiary or contingent beneficiary. (*Id.*, Ex. A at 18.) Neither a phone call to Karter nor a message slip given to a sister is sufficient to meet this requirement. Jackson's third theory is similarly flawed. To begin, the new policy proposal did not contain a beneficiary designation. (*See* Am. Countercl., Ex. 3.) Even if the new policy proposal did contain a beneficiary designation, however, the Insured chose to reinstate the Policy, rather than enter into a new

---

[2] Jackson appears to take issue with the application of Georgia law to her contract claim. (*See* Opp'n to Pl.'s Mot. to Dismiss Am. Countercl. 7 n.4.) In asserting that application of Georgia law may not be appropriate, Jackson points to the payment of premiums on the Policy from a Maryland bank account and to the new policy proposal for $250,000, which stated that it was for issue in Maryland, but was never issued by MetLife. (*See id.*) Because the Policy was reinstated in Georgia (*see* Am. Countercl., Ex. 4 at 4, 14), Georgia law clearly applies. However, even were Maryland law to apply, the result would be the same. *See Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001) ("To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation.").

7

policy contract. (*See id.*, Ex. 4.) Accordingly, the new policy proposal was never adopted and Jackson's third theory fails.

Jackson's fourth theory asserts that MetLife, through Karter, breached a contract by not providing information in the beneficiary section of the reinstatement application. (*Id.* at ¶ 13.) Jackson calls attention to the instructions that precede the beneficiary field on the reinstatement application, claiming that the instructions "direct[] the applicant around the only question dealing with beneficiaries." (Opp'n to Pl.'s Mot. to Dismiss Am. Countercls. 8.) The instructions provide that "[i]f this application is being used: to reinstate a policy; or to make a change to an existing policy, this section need NOT be completed." (Am. Countercl., Ex. 4 at 4.) As MetLife explains, the reason these instructions describe the beneficiary field as optional is because "[i]n the case of reinstatement, there is necessarily a preexisting policy and beneficiary designation. As such, it would be unnecessary to complete the beneficiary section of a reinstatement application when an applicant desires to maintain the preexisting designation." (Mot. to Dismiss Am. Countercls. 14.)

Importantly, by signing the reinstatement application, the Insured agreed that he "read [the] application for life insurance including any amendments and supplements and to the best of [his] knowledge and belief, all statements are true and complete." (Am. Countercl., Ex. 4 at 10.) MetLife did not breach its obligation to the Insured by not filling out the beneficiary section of the reinstatement application. Rather, MetLife reinstated the Policy in accordance with the "true and complete" information provided on the Insured's reinstatement application. Therefore, all of the bases upon which Jackson claims that MetLife breached its contract with the Insured fail to state a claim for breach of contract.

In addition to claiming that MetLife breached its contractual obligation to the Insured, Jackson claims that as the intended third party beneficiary of the Policy, she "was owed a

contractual obligation by [] MetLife to properly record the change of the designation of the beneficiary of the aforementioned insurance policy as directed by the Decedent," and MetLife breached that obligation. (*Id.* ¶¶ 25-26.) Under Georgia law, "[i]n order for a third party to have standing to enforce a contract . . . it must clearly appear from the contract that it was intended for his benefit. The mere fact that he would benefit from performance of the agreement is not alone sufficient." *Miree v. United States*, 242 Ga. 126, 135 (Ga. 1978) (citation omitted). "Unless such an intention is shown on the face of the contract, defendant is under no duty and consequently plaintiff acquires no right as the third party beneficiary." *Plantation Pipe Line Co. v. 3-D Excavators, Inc.*, 160 Ga. App. 756, 757 (Ga. Ct. App. 1981). Nothing on the face of the reinstatement application states that the Policy is intended for Jackson's benefit. Accordingly, Jackson has not demonstrated that she is an intended beneficiary of the Policy and this claim fails, as well. Because Jackson has failed to state a claim for breach of contract with respect to both the Insured and Jackson in her individual capacity, MetLife's Motion to Dismiss Jackson's breach of contract claim is granted.

## 2. Negligence

In the second count of the amended counterclaim, Jackson claims that,

> MetLife negligently breached its duty to the [estate of the Insured] by failing to properly record the change of beneficiary on the Decedent's insurance Policy to his widow, [] Jackson, by their agent [] Karter's negligently ignoring the various attempts by the Decedent to change the beneficiary on his policy . . . or, in the alternative, by failing to remove the name of . . . Davis as beneficiary to said policy.

(Am. Countercl. ¶ 29.) In contrast to the contract claim, Jackson's negligence claim is governed by Maryland law. "Maryland adheres to the *lex loci delicti* rule in analyzing choice of law problems with respect to causes of action sounding in tort." *Ben-Joseph v. Mt. Airy Auto*

*Transporters, LLC*, 529 F. Supp. 2d 604, 606 (D. Md. 2008) (citing *Erie Ins. Exch. v. Heffernan*, 925 A.2d 636, 648-49 (Md. 2007); *Lab. Corp. of Am. v. Hood*, 911 A.2d 841, 844 (Md. 2006); *Philip Morris v. Angeletti*, 752 A.2d 200, 230 (Md. 2000)). Under this conflict of laws principle, "the place of the tort is considered to be the place of injury." *Angeletti*, 752 A.2d at 231 (citing Restatement (First) of Conflict of Laws § 377 (1934)). "Where the events giving rise to a tort action occur in more than one state, the court must apply the law of the State where the injury – the last event required to constitute the tort – occurred." *Ben-Joseph*, 529 F. Supp. 2d at 606 (internal quotation and citation omitted). Here, the last event required to constitute the tort, the alleged injury to Jackson from MetLife's "negligent failure to properly record the beneficiary" (Am. Countercl. ¶ 30), occurred in Maryland. Therefore, Maryland law applies.

Under Maryland law, "[a] contractual obligation, by itself, does not create a tort duty. Instead, the duty giving rise to a tort action must have some independent basis." *Mitchell, Best & Visnic, Inc. v. Travelers Prop. Cas. Corp.*, 121 F. Supp. 2d 848, 853 (D. Md. 2000) (citing *Mesmer v. Md. Auto. Ins. Fund*, 725 A.2d 1053, 1058 (Md. 1999)). The negligence claim in the amended counterclaim alleges MetLife breached its duty to "properly record the change of beneficiary of his insurance Policy or, in the alterative, to remove the name of [] Davis as beneficiary. . . ." (*See* Am. Countercl. ¶ 28.) Jackson alleges that MetLife breached the same duty in her contract claim. (*See id.* at ¶ 22 ("MetLife owed a contractual obligation . . . to properly record the change of beneficiary for the aforementioned insurance policy, or in the alternative, to remove the name of [] Davis as beneficiary . . . .").) Therefore, the tort duty allegedly breached by MetLife arises directly from the contract between MetLife and the Insured, and has no independent basis. Because a contractual obligation alone cannot form the basis of a negligence claim under Maryland law, MetLife's Motion to Dismiss Jackson's

negligence claim is granted. As the contract and tort claims constitute the two counts in the amended counterclaim, the amended counterclaim is dismissed in its entirety.

      B. <u>Motion for Discharge from Further Liability, Permanent Injunction, Dismissal with Prejudice, and Recovery of Attorneys' Fees and Costs</u>

MetLife moves this Court for discharge from further liability, permanent injunction, dismissal with prejudice, and recovery of attorneys' fees and costs. I sever MetLife's Motion for Discharge from Further Liability, Permanent Injunction, Dismissal with Prejudice from its Motion for Recovery of Attorneys' Fees and Costs, and consider each separately.

      *1. Discharge from Further Liability, Permanent Injunction, Dismissal with Prejudice*

The Federal Interpleader Act sets forth three requirements for an interpleader action: (1) an amount in controversy over $500; (2) two or more adverse claimants of diverse citizenship who claim or may claim rights to the money or property; and (3) the deposit of the money or property into the Court's registry. *See* 28 U.S.C. § 1335(a). Where the requirements of Section 1335 are met, district courts are authorized under the Act to:

> enter its order restraining [the claimants] from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action . . . .
>
> Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment.

*See* 28 U.S.C. § 2361. Each of the requirements of 28 U.S.C. § 1335(a) have been met: the amount in controversy in this case is $214,482.66, which is comprised of the Proceeds plus interest; Davis and Jackson are citizens of North Carolina and Maryland, respectively; and MetLife deposited the funds into the Court's registry on November 5, 2010. MetLife has thus fulfilled its obligations with respect to the Policy. Accordingly, MetLife is discharged from

further liability and dismissed from this action with prejudice.[3] *See* 28 U.S.C. § 2361. Defendants are enjoined from instituting or prosecuting against MetLife any claim in state or federal court affecting the life insurance benefits at issue in this case, except by way of interpleader in this action. *See Fed. Ins. Co. v. Parnell*, 2009 U.S. Dist. LEXIS 80362 (W.D. Va. Sept. 3, 2009) (discharging insurer from the action in accordance with the Interpleader Act, and granting a permanent injunction preventing the claimants from instituting or prosecuting any proceeding in any State or United States court affecting the policy or the proceeds that insurer deposited with the Court).

## 2. *Recovery of Attorneys' Fees and Costs*

MetLife claims that through December 31, 2010, it has incurred $22,353.95 in outside counsel fees, comprised of 91.8 hours of attorney and paralegal time in this matter. (Mot. for Discharge 10.) During this same period of time, MetLife claims to have incurred $1003.04 in costs and expenses. (*Id.*) MetLife asserts that the hourly rates charged to MetLife, as well as the number of hours that counsel have worked, are reasonable in light of the nature of this interpleader action, taking into account that this action involved two lawsuits in two states, and therefore two law firms. (*Id.* & Ex. A at 2.) Nevertheless, MetLife has agreed to the compromised amount of $11,000 in attorneys' fees and costs in an effort to end its involvement in this action. (*See id.* at 10.) Davis consents to this award. (*Id.* at 6.) Jackson also agrees to the amount of $11,000, but conditionally, stating "we will consent to the attorney's fees of $11,000.00 as long as your client will agree to continue to provide any requested information

---

[3] Davis consents to the requested relief. Jackson, however, opposes the Motion because of her counterclaims against MetLife. Jackson states that based on her contract and tort claims, MetLife "is no longer a 'disinterested stakeholder' in this action." (Opp'n to Pl.'s Mot. for Discharge 2.) In light of the dismissal of Jackson's claims against MetLife, Jackson's opposition to MetLife's Motion is rendered moot.

without need for my client to subpoena documents." (*Id.*) MetLife voluntarily produced its entire claim file to Jackson on August 31, 2010 and its agent's customer file on September 2, 2010. (*Id.* at n.1.) Accordingly, there is no further information MetLife can provide to Jackson. The only question that remains is whether, in this Court's discretion, MetLife will be awarded the attorneys' fees and costs it requests.

"Despite the lack of an express reference in the federal interpleader statute to costs or attorney's fees, federal courts have held that it is proper for an interpleader plaintiff to be reimbursed for costs associated with bringing the action forward." *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Sprague*, 251 F. A'ppx 155, 156 (4th Cir. 2007) (citations omitted). Generally, in a federal interpleader action, attorneys' fees and costs are awarded only to the party who initiates interpleader as a mere disinterested stakeholder. *See Rapid Settlements, Ltd. v. U.S. Fid. & Guar. Co.*, 672 F. Supp. 2d 714, 722 (D. Md. 2009) (citation omitted); *see also Aetna Life Ins. Co. v. Outlaw*, 411 F. Supp. 824, 825 (D. Md. 1976) (awarding attorneys' fees and costs to plaintiff insurer, which acted as an impartial stakeholder in the interpleader action).

> The theory behind the award of attorneys' fees in interpleader actions, an exception to the usual American rule by which parties generally bear their own legal costs, is that plaintiff by seeking resolution of the multiple claims to the proceeds benefits the claimants and that plaintiff should not have to absorb attorneys' fees in avoiding the possibility of multiple litigation.

*Aetna Life Ins. Co.*, 411 F. Supp. at 826 (citations omitted).

Having dismissed Jackson's counterclaims against MetLife, MetLife is a disinterested stakeholder. MetLife filed this interpleader action seeking a judicial determination as to whom to pay the Policy. MetLife does not contest its obligation to pay, and has already deposited the funds into the Court's registry. MetLife has no interest in whether Davis or Jackson is

determined to be the recipient of the Proceeds of the Policy. Thus, MetLife is a mere stakeholder and will be awarded its reasonable attorneys' fees and costs in the amount of $11,000, to be paid from the interpleader fund in the Court's registry.

A separate order is being entered herewith.

<u>May 31, 2011</u>  /s/
Date J. Frederick Motz
 United States District Judge